**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SOFPOOL, LLC, | § | |
| | § | |
| vs. | § | CASE NO. 2:07-CV-097 |
| | § | |
| INTEX RECREATION CORP. | § | |

**MEMORANDUM OPINION AND ORDER**

**1. Introduction**

Two design patents are at issue in this case, each drawn to a swimming pool design. The first patent, U.S. Patent No. D408,546, ("the '546 patent" or "the Round Pool Patent"), issued on April 20, 1999, and includes 18 figures which display 4 embodiments of the claimed round swimming pool. The second patent, U.S. Patent No. D480,817 ("the '817 patent" or "the Oval Pool Patent"), issued on October 14, 2003, and includes 11 figures which display 3 embodiments of the claimed oval swimming pool. Both patents are entitled, "Above Ground Swimming Pool."

**2. Overview of Design Patent Law**

A design patent is fundamentally different from a utility patent, but in some areas, the law pertaining to each overlaps. For example, although the factual inquiry for infringement varies with respect to each type of patent, the first step in an infringement determination for both types of patents requires the court to determine the scope and meaning of the claims.[1] *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (citing *Markman v. Westview Instruments,*

---

[1] The Federal Circuit has recently granted a petition for rehearing *en banc* to decide the applicability of claim construction to a design patent litigation, and, if appropriate, the resulting role of the claim construction in the infringement analysis. *Egyptian Goddess, Inc. v. Swisa, Inc.*, No. 2006-1562, slip op. at 3 (Fed. Cir. Nov. 26, 2007). Pending the Federal Circuit's decision, the court will apply the prevailing jurisprudence in this area.

*Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).

A design patent protects the novel, non-functional aspects of a claimed ornamental design. *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir.1993); *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). The bulk of the disclosure in a design patent are the drawings, which set forth the limits of the claim. Design patents are limited to what is depicted in the drawings and therefore have almost no scope. *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988).

Claim construction in the context of a design patent involves an "additional level of abstraction" that is not required when construing the claims of a utility patent. *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996). This abstraction is created by the lack of a written description as is present in a utility patent. *Id.* In contrast to a utility patent case, in a design patent case, the court is presented with only visual descriptions of the claimed subject matter. *Id.* "Given the lack of a visual language, the trial court must . . . translate these visual descriptions into words–*i.e.*, into a common medium of communication." *Id.* In this regard, the scope of the claimed invention must include the "'overall ornamental visual impression [of the design], rather than . . . the broader general design concept . . . .'" *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2000) (quoting *OddzOn Products, Inc.*, 122 F.3d at 1405). "When properly done, this verbal description should evoke the visual image of the design." *Durling*, 101 F.3d at n.2.

Design patent claim construction is properly conducted through the eyes of the court, and reference need not be made to an ordinary observer or a designer of ordinary skill. *Minka Lighting, Inc. v. Craftmade Intern, Inc.*, 93 Fed. Appx. 214, *2 (Fed. Cir. 2004) (unpublished opinion). Although case law does not prohibit a detailed claim construction for a design patent, a lengthy

claim construction is not required. *Id.* ("[A] district court need not always verbally construe at length a design patent's drawings") ; *Durling*, 101 F.3d at 104 (rejecting a broad claim construction of a design patent claim because it focused on the general concept of the design rather than the design's visual appearance). "[A]n extensive verbal claim construction may be helpful particularly if the drawings contain features that are not part of the patented design, *e.g.*, if the drawings contain functional features or if there is a point of novelty to consider." *Id.* (citation omitted).

Ordinarily, functional aspects of a design cannot be claimed. *OddzOn Products, Inc.*, 122 F.3d at 1405 ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."). Functional design elements can be claimed, however, when they serve a primarily ornamental purpose, *e.g.,* in circumstances where there are several ways to achieve the underlying function. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). The determination of whether an aspect of a patented design is functional or ornamental is a question of fact. *PHG Techs., LLC v. St. John Cos., Inc.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006). Therefore, it is appropriate to defer functionality determinations to trial, when the court's construction can be further limited based on the jury's findings in this regard. *Five Star Mfg. v. Ramp Lite Mfg., Inc.*, 44 F. Supp.2d 1149, 1156 (D. Kan. 1999) ("The current construction may be further limited at trial by factual determinations regarding the ornamentality of the included features.").

Much like the case with utility patents, it is proper for a court to look to the intrinsic record, *e.g.*, the prosecution history, when construing the claim of a design patent. *See Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995); *Goodyear Tire & Rubber, Co. v. Hercules Tire & Rubber,*

*Co., Inc.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998). One difference in claim construction law between utility patents and design patents, however, deals with the use of broken lines in the drawing(s) of a design patent. "If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do so signals inclusion of the features in the claimed design." *Contessa Food Products, Inc.*, 282 F.3d at 1378 (citing *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001).

**3.     Discussion**

   **A.     The Round Pool Patent**

The Round Pool Patent is directed to a round, above ground swimming pool. The prosecution history of the Round Pool Patent provides insight that bears on the court's claim construction analysis. The court will therefore briefly summarize the relevant portions of the prosecution history.

Contemporaneous with the filing of the Round Pool Patent, the applicant submitted a 1994 catalog depiction of a Sofpool prior art swimming pool to the Examiner. *See* Brief of Plaintiff, Exhibit G at 33 (P100049). The Examiner thereafter rejected the Round Pool Patent as obvious in view of the submitted catalog depiction. *Id.* at 36 (P100052). In his response to the Examiner's rejection, the applicant submitted substitute drawings to conform the various views of the claimed design with the perspective views pool as originally filed. *Id.* at 40 (100056). In certain drawings, the applicant made changes to both the pool's outer periphery and shading.[2] In other drawings, the

---

   [2]     These changes were made to Figures 2, 4, 7, 9, 11, 13, 16, and 18. *See* Brief of Plaintiff, Exhibit G at 40 (P100056).

applicant changed only the shading used to define certain visual aspects of the claimed pool.[3] The applicant did not change any of the four perspective views of the claimed swimming pool design. In reference to the substitute drawings, the applicant stated,

> [t]he perspective views were and are correct representations of the claimed design. However, it has recently been determined by making actual measurements of the sidewalls of prototypes of different sizes, that the outer peripheries are not perfectly circular. Moreover, there is an elevated bulge area in the sidewall between each of the seams, which was not accurately represented by shading included in the original top plan and side elevational views. And, in the bottom plan views, it was realized that the uplifted portion of the pool sidewall, between the bulge and the supporting floor, was not properly shown.

*Id.* at 41 (P100057)

In his response to the Examiner's rejection, the applicant also made the following substantive remarks in an effort to traverse the rejection.

> Applicant submits that a variety of visual features, considered both individually and overall, distinguish his claimed invention over the prior art Sofpool. For example, the pool of the claimed invention includes a plurality of outwardly protruding seams, spaced circumferentially around the periphery of the pool. Between each of the seams, an upper bulge and a lower uplifted portion exsit. The upper bulges are evident when viewing the pool sidewall in the perspective, the elevational, and in the top plan views. The lower uplifted portions can be seen in the perspective, the elevational, and in the bottom plan views.
>
> In the prior art Sofpool design, the seams are depressed or withdrawn from the outer periphery of the sidewall. . . . There is no elevated bulge between the seams. And, the lower edge of the sidewall is not uplifted between the seams. Rather, the entire lower edge, other than the withdrawn portion at the seam, assumes a similar floor-engaging posture, around the entire pool.

---

[3] These changes were made to Figures 3, 5, 8, 12, 14, and 17. *Id.*

*Id.* at 42 (P100058). The Examiner thereafter issued a notice of allowance, and the Round Pool Patent issued. *Id.* at 54-57 (P100070-73).

The plaintiff proffers the following claim construction:

> A round, above ground swimming pool with a large bulge circulating around the outside periphery of the pool, above the ground, and extending approximately to the mid-point of the side of the pool, with a slight inward and upward sloping side on the surface of the pool from the bulge to the top of the pool, with a smooth-appearing, generally tubular collar at the top of the pool, with panels forming the outside periphery of the pool joined by seams. The circumference of the ground engaging area of the pool is close to the same as the circumference at the top of the pool where the sidewall joins the collar. The slope of the angle from the engagement point of the pool with the ground to the top of the pool is close to vertical. All of these features, when taken together, give the pool a distinctive and pleasing ornamental appearance.

Brief of Plaintiff, at 4. The defendant proposes the following counter-construction:

> A generally round, faceted, above-ground pool that can be divided into (3) three basic sections: 1) an upper rail, 2) a sidewall, and 3) a base.
>
> A. The Upper Rail:
> 1. A generally tubular rail comprising the entire circumference of the uppermost portion of the pool.
> 2. A loose fitting fabric stretched over the rail.
>
> B. The Sidewall:
> 3. Panels connected by outwardly protruding seams.
> 4. Each panel includes an elevated bulge area creating a convex surface between the outwardly protruding seams.
> 5. Each panel also includes a lower uplifted portion creating a concave surface between the outwardly protruding seams.
> 6. The area between the upper bulge and lower uplifted portion has a substantially flat surface extending between the outwardly protruding seams.
> 7. The substantially flat surface of the area between the upper bulge and lower uplifted portion defines the top and bottom profiles of the pool, creating a faceted profile when viewed from the top or bottom.

        8.       In addition, each panel includes two small circular pads, one on the left side of the panel and the other in the middle of the panel.

        9.       A strip extends between each circular pad and the loose fitting fabric covering the upper rail.

    C.      The Base:

       10.     The base consists of a prominent circle on the supporting floor having approximately 60% of the area compared to the area inside the circular upper rail.

       11.     The sidewall panels connect to the prominent circle at a seam, and radiate outward along the supporting floor.

       12.     The intersection of the panels and supporting floor is a series of symmetrical concave curves extending out toward the seams.

Defendant's Opening Brief at 5-9, 16-17.

The parties' competing claim constructions are oceans apart. For example, the plaintiff's proposed construction is more visual in nature, whereas the defendant's proposal is more mechanical in nature. During the *Markman* hearing, the plaintiff supported its proposed construction with reference to an ordinary observer and the allegedly infringing Intex pool. Citing no case law, the plaintiff also argued that the prosecution history failed to bear on the claim construction analysis in design patents. The plaintiff's arguments are misplaced in view of the prevailing case law. During the *Markman* hearing, the defendant supported its proposed construction with heavy reference to extrinsic evidence, *e.g.* scientific modeling of the patent's drawings. The defendant also argued that, under *Durling*, design patent claims should be construed with an eye towards detail. The defendant's reliance on extrinsic data is misplaced, and the court rejects the overly-detailed nature of its proposed construction because it fails to evoke the visual impression of the claimed swimming pool. *See Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Durling*, 101 F.3d at n.2.

In light of the intrinsic record and prevailing case law, the court adopts the following claim construction for the Round Pool Patent:

> A round, above-ground swimming pool with a generally tubular collar at the top of the pool, a circular base that forms a portion of the floor of the pool, and a plurality of panels that form a portion of the floor of the pool, as well as the pool's sidewall. The panels are connected to each other by a plurality of outwardly protruding seams that are spaced circumferentially around the periphery of the pool. Between each of these seams, the sidewall forms a prominent bulge that is defined by a lower uplifted portion and an upper sloping portion. This bulge extends circumferentially around the pool and gives the outer periphery of the pool a generally circular shape. The bulge is located above the ground but lower than the mid-point of the sides of the pool. The lower uplifted portion extends from the bulge to the floor of the pool at a somewhat sharp pace, and the upper sloping portion extends from the bulge to the collar at a more gradual, aesthetically pleasing pace.

**B.     The Oval Pool Patent**

The Oval Pool Patent is directed to an ovular, above ground swimming pool. Unlike the Round Pool Patent, the prosecution history of the Oval Pool Patent is succinct. Only one clarifying remark was made by the applicant during prosecution. This remark was directed to the broken lines depicted in Figure 11. In an effort to clarify their purpose, the applicant stated that the broken lines in Figure 11 were meant to show that an "indeterminate number of panel and strut assemblies may be used between the claimed end portions," and "does not form any part of the claimed design." Brief of Plaintiff, Exhibit H at 30 (P100116). In response to these remarks, the Examiner amended the application's description of Figure 11 to conform to the applicant's remarks in this regard, and allowed the application to issue as a patent.

The plaintiff's proposed construction is

> An above ground swimming pool with an oval shape having a prominent bulge around the periphery of the pool, located above the ground but lower than the mid-point of the sides of the pool, with the sides of the pool having a slight inward and upwardly sloping side surface from the bulge to the top of the pool, with a smooth collar at the top of the pool, the pool having one or more generally U-shaped struts along each of the substantially straight sides of the pool, with a horizontal bar which may or may not be obscured at the top of each strut. The U-shaped struts are connected at their base to a strap that extends out of sight beneath the pool. The oval pool does not have struts at each end of the pool. All of these features when taken together give the pool a distinctive and pleasing ornamental appearance.

Plaintiff's Brief at 7.

The defendant's proposed construction is:

> A generally ovular, above-ground pool that can be divided into five basic sections: 1) an upper rail, 2) a sidewall, 3) a base, 4) struts, and 5) connectors between the struts and the base.
>
> A. The Upper Rail
> 1. A generally tubular rail comprising the entire circumference of the uppermost portion of the pool.
> 2. The profile of the pool at the rail is identical to the profile of the pool at the largest portion of the sidewall.
>
> B. The Sidewall
> 3. Panels of three different lengths divided by prominent lines.
> 4. The sidewall creates a curve at each end of the pool, with each end having five medium panels and two small panels.
> 5. The curved ends are connected by two or more large, straight panels (at least one on each side).
> 6. Each panel has an elongated or shallow S-shaped sidewall with a lower outwardly curved portion and an upper inwardly curved portion.
> 7. The outwardly curved portion on the long, straight panels touches the struts at its outermost point.
> 8. The inwardly curved portion on the long, straight panels touches the struts at its ends and separates from the struts in the middle.

     9.     The panels on the curved ends each have a lower uplifted portion creating a concave surface, but the straight sidewalls do not.

    C.     The Base

    10.    The base consists of a prominent oval on the supporting floor having approximately 64-67 % of the area compared to the area inside the ovular upper rail.

    11.    The sidewall panels connect to the prominent oval at a seam, and radiate outward along the supporting floor.

    12.    The panels intersect with the supporting floor in straight lines along the straight side and in concave curves around the curved ends.

    D.     The Struts

    13.    The upper rail of the pool is supported at each long, straight panel by a single strut.

    14.    The strut consists of a rod bent in the shape of a trapezoid, splaying apart so that it is wider at the top than at the bottom.

    15.    There is a strip at the point where the strut meets the upper rail.

    16.    The strip has a width approximately the same as the width of the struts.

    E.     Connectors Between the Struts and the Base

    17.    A piece of material between the struts and the base that is connected to the bottom of the strut.

    18.    The width of the material is larger than the distance between the bottom of the strut and the bottom of the pool.

Defendant's Brief at 10-15, 17-18.

Once again, the parties' competing constructions differ dramatically. In view of the prevailing law, the court adopts the following claim construction for the Oval Pool Patent:

> An ovular, above-ground swimming pool with a generally tubular collar at the top of the pool, an ovular base that forms a portion of the floor of the pool, and a plurality of panels that form a portion of the floor of the pool as well as the pool's sidewall. The panels are connected to each other by a plurality of seams that are spaced around the periphery of the pool. Between each of these seams, the sidewall forms a prominent bulge that is defined by a lower sloping portion and an upper sloping portion. This bulge extends around and

defines the pool's ovular outer periphery. The bulge is located above the ground but lower than the mid-point of the sides of the pool. Throughout each of the curved ends, the lower sloping portion is uplifted and extends from the bulge to the floor of the pool at a somewhat sharp pace. Throughout each straight side of the pool, the lower sloping portion extends from the bulge to the floor of the pool at a somewhat sharp, curved pace.  The upper sloping portion gradually extends from the bulge to the collar at a somewhat steep aesthetically pleasing angle.  The pool has one generally U-shaped strut within each panel that forms the straight side of the pool.  The top of the generally U-shaped strut is bounded by a horizontal bar.  The base of each strut is connected to a rectangular strap that extends to a location beneath the floor of the pool.  The width of the strap is substantially the same as the length of the bottom portion of the generally U-shaped strut.  The pool does not have struts within each panel forming the curved ends of the pool.

**4.     Conclusion**

The court adopts the above constructions.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the constructions adopted by the court.

SIGNED this 19th day of December, 2007.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE